**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: August 15, 2014
Date Decided: September 8, 2014

Michael F. Bonkowski
David W. Giattino
Cole, Schotz, Meisel, Forman &
Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801

Robert A. Penza
Christopher M. Coggins
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801

Re:     *Scott v. Dondero*
         Civil Action No. 9041-VCG

Dear Counsel:

Consider the persimmon. No wild fruits are so sweet and delectable as ripe persimmons after the first fall freeze, if you can beat the birds to them. But a green persimmon is not just less tasty; it is inedible. Not even a 'possum will eat a green persimmon. As with fruit, so with litigation. A bench judge has several tools to ensure that litigation, while perhaps not sweet, is at least palatable: one of these is the power to stay litigation in the interest of judicial and litigants' economy. I used that discretion to stay this matter pending resolution of some related issues currently being litigated in Texas, with leave for any party to seek to lift the stay. The plaintiff and the third-party defendant have made such a request, which is denied for the reasons below.

1

A. *Background*

In November 2010, the Dugaboy Investment Trust (the "Trust"), a Delaware trust, was formed. Plaintiff Grant James Scott III is Independent Trustee, Third-Party Defendant James Dondero is Initial Trustee and Family Trustee, the Commonwealth Trust Company ("Commonwealth") is Administrative Trustee, and Dana Scott Breault is Settlor. James[1] is also the primary beneficiary of this Trust pursuant to Section 3.1(a)(i) of the Trust Agreement.

Since September 2011, James and Defendant Rebecca Dondero have been engaged in divorce litigation in Dallas, Texas. In that matter, the Donderos are litigating James' obligation to pay Rebecca, upon their divorce, in accordance with a Marital Property Agreement entered into prior to their nuptials. Rebecca has alleged in that action that the Trust was set up and is being used by James to avoid paying her under this prenuptial agreement.[2]

On August 19, 2013, Rebecca sent a Demand Letter to Commonwealth purportedly on behalf of her children, whom the letter describes as the "beneficial owners" of the Trust.[3] This Letter requested a "'written statement of accounts;'" "information about the Trust acquiring and/or disposing of assets;" "information

---

[1] I refer to James and Rebecca Dondero by their first names to prevent confusion; no disrespect is intended.

[2] *See, e.g.*, Pl.'s Mot. to Compel Proper Responses to Interrogatories ¶ 18 (noting that Rebecca has alleged in the Texas litigation that the Trust is a sham, and that James fraudulently transferred assets to the Trust).

[3] Answer, Counterclaim and Third-Party Complaint Ex. A at 1.

with respect to the Trust's affairs, 'including the review of trust accountings, reports, and communications between [Commonwealth] as Trustee, the Settlor, any co-Trustees, and unrelated third party inquiries;'" and "a 'statement of accounts' that shows five categories of information: (i) Trust property not previously listed as Trust property; (ii) Trust receipts and disbursements, including their destination and origin; (iii) 'property being administered;' (iv) cash-on-hand; and existing liabilities."[4] In this Letter, Rebecca conveyed her intent to initiate litigation against Commonwealth if her demands were not satisfied within sixty days.[5] The Plaintiff contends that this Demand Letter, as well as counter-claims filed in this matter, were mechanisms used by Rebecca to obtain Trust documents for use in the Texas litigation.

On October 28, 2013, Scott filed a Verified Complaint on behalf of the trust, requesting a declaratory judgment that there was no basis for an accounting, including because Rebecca lacked standing; that complying with the demand letter and performing an accounting would involve the wrongful dissipation of Trust assets; and that bringing a lawsuit to demand an accounting would be an abuse of process.

On December 27, Rebecca filed a Counterclaim and Third-Party Complaint against James. In her Counterclaim and Third-Party Complaint, she contends that

---

[4] Compl. ¶¶ 11-13

[5] *See, e.g.*, Answer, Counterclaim and Third-Party Complaint Ex. A at 1.

the Trust is a sham, that James is using the Trust to defraud her of funds due her in connection with their divorce, and that Scott and James have conspired to facilitate James' evasion of his obligations under the Marital Property Agreement. She no longer asserts that she is acting on behalf of her children, the residuary beneficiaries of the trust; her standing to challenge the actions of the trust is based upon her creditor status, which is currently being litigated in Texas.

On July 1, 2014, I held oral argument on pending discovery motions. Among those was the Plaintiff's motion for a protective order, on the ground that Rebecca was using discovery in this Court to facilitate the litigation in Texas, to circumvent limitations on discovery there. At that time, I *sua sponte* stayed litigation in this matter, pending the Texas court's resolution of the matters pending before it which will necessarily bear on issues here. At oral argument, and pursuant to an Order of this Court entered July 3, I made clear that "[e]ither party may seek to lift the stay as appropriate."[6]

On July 9, Scott and James moved to partially lift the stay; this Motion is opposed. For the following reasons, I deny this Motion.

B. *Analysis*

"The Court may, in the interests of comity and judicial efficiency, stay an action before it in favor of another with an identity of parties and issues pending in

---

[6] *Scott v. Dondero*, C.A. No. 9041-VCG (Del. Ch. July 3, 2014) (ORDER).

4

another forum."[7] Conversely, "[i]t may be appropriate for the Court to lift a stay when the circumstances that justified the entry of the stay . . . no longer obtain."[8]

I previously entered a stay of this matter pending the resolution of matters being litigated in a Texas court, as that court's determination would dictate whether Rebecca is a creditor of James, the Trust's primary beneficiary, and thus has an incentive to pursue her counterclaims here.[9] A stay in this matter may avoid needless litigation; it also avoids the Plaintiff's concern that any party may use discovery in this Court to obtain discovery unavailable, but useful, in the Texas action, or otherwise leverage one action through litigation in the other. If the Texas court determines that Rebecca is not a creditor of James, then she will have no interest in the Trust, and the counterclaims she brought against Scott and James likely fall away. Likewise, if Rebecca lacks an interest in the Trust, then pursuit of the Plaintiff's claims, designed to negate the pre-suit demands Rebecca made of the Trust, would be unnecessary. Furthermore, Rebecca has alleged in Texas that James is using the Trust to evade his obligation to her; that court's determination may resolve an issue presented here.[10]

---

[7] *In re Molycorp, Inc. S'holder Derivative Litig.*, 2014 WL 1891384, at *4 (Del. Ch. May 12, 2014).

[8] *Id.* (internal quotation marks omitted).

[9] *See, e.g.*, Oral Arg. Tr. 5:1-5. I recognize that movants concede that Rebecca is a "creditor" under the Uniform Fraudulent Transfer Act, 6 *Del. C.* § 1301. *See* Mot. to Partially Lift Stay ¶ 20. I do not suggest that these claims are unripe or otherwise could not be pursued in Delaware while Texas litigation is pending; rather, I find it would be inefficient to do so.

[10] *See, e.g.*, *id.* at 7:16-23.

In their Motion, Scott and James argue that I should lift the stay in order to address and resolve those claims related to the administration of this Delaware Trust, which they contend are unrelated to the Texas action.[11] The movants emphasize that, in accordance with the Trust Agreement, these claims are to be resolved in Delaware and will not be addressed in Texas. Additionally, the movants argue that maintenance of the stay will leave "issues of critical importance . . . unaddressed" and "Scott's reputation . . . in limbo."[12]

In denying this Motion, I note that no circumstances have changed since I entered the stay. More importantly, I also note that resolution of the Delaware action is not unrelated to the pending decision of the Texas court, particularly as to those claims that James is obligated to pay Rebecca a lump sum under their prenuptial agreement, and that he is attempting to evade this obligation through fraud. While the Texas court will not be addressing the administration of the Trust, a matter properly for Delaware courts, its decision will undoubtedly impact which claims, if any, will remain to be litigated in Delaware, and the standing and incentive of the Defendant to pursue her counterclaims. It is unclear what "issues of critical importance" in the complaint are "pressing," since the complaint was

---

[11] *See, e.g.*, Mot. to Partially Lift Stay ¶ 19 ("[T]he Court is not asked to answer any questions that the Texas Court should answer, including whether the Defendant is owed money under the prenuptial agreement and whether Mr. Dondero fraudulently hid assets in the Delaware Trust."); *id.* at ¶ 21 ("Scott's and Mr. Dondero's alleged misconduct is tangentially related, if not unrelated, to the Texas Divorce . . . .")

[12] *Id.* at ¶ 15.

6

brought only in reaction to, and to forestall, Rebecca's demand. The movants emphasize that the Independent Trustee's reputation has been impugned via the Texas litigation and the Delaware counterclaims, and that accordingly, he has an interest in the prompt resolution of these issues, inconsistent with awaiting the resolution of issues in Texas. This is not a slander action, however. If, as the movants argue, Rebecca has no standing to challenge the actions of the trust—if, for instance, the Texas court finds that the prenuptial agreement precludes her recovery of funds in this trust—this Court is unlikely to reach the fraud allegations. In any event, it is hard to square a declaratory judgment action paid for by the beneficiaries of a trust brought primarily to vindicate the reputation of a trustee, which also contends that complying with the Defendant's demand would entail a waste of trust resources. Accordingly, I find it prudent to deny this Motion, and continue the stay of this action until resolution of the pending issues by the Texas court. However, should circumstances warrant, any party may seek to lift the stay of this action, as appropriate. Nothing in this Opinion restricts the rights of Rebecca's Delaware counsel to review and use here confidential Texas discovery obtained by Rebecca in the Texas litigation, subject to the confidentiality agreement entered as an order of this Court.

C. *Minor Beneficiaries*

Once the stay is lifted, continued litigation in this matter will require appointment of an attorney for the minor beneficiaries, *ad litem*.

D. *Conclusion*

The motion to lift the stay in this action is DENIED without prejudice. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III